**LAWRENCE BERNHEIM #044848**
**HEIDI S. BERNHEIM, #230459**
**BERNHEIM & HICKS**
528 A Street
Santa Rosa, CA 95401
(707) 528-7555
(707) 528-2307 (fax)

Attorneys for Defendant
KEVIN DWAN, an individual
and dba BLUE TOOLS SOFTWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| STEVEN BEIGEL,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>KEVIN DWAN, an individual; and KEVIN DWAN, doing business as BLUE TOOLS SOFTWARE; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No.  C-02-3116 JL ADR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN PARTIAL OPPOSITION AND IN PARTIAL SUPPORT OF MOTION FOR ORDERS MODIFYING AND/OR RECONSIDERING AUGUST 11, 2003 AND NOVEMBER 17, 2003 ORDERS, DIRECTING RECEIVER TO DISBURSE FUNDS, DIRECTING DEFENDANT TO TURN OVER FILTRIX PROCEEDS, AND TERMINATING RECEIVERSHIP**<br><br>Date:  10/7/05<br>Time:  2:00 p.m.<br>Ctrm:  1, 4th Floor<br><br>Judge:  The Hon. D. Lowell Jensen |

**I**

**INTRODUCTION**

Plaintiff, STEVEN BEIGEL, places a series of motions before the Court.  Each motion will be addressed individually. Defendant DWAN has substantial reservations about each of the

---

1
Memorandum of Points and Authorities in Partial Opposition, etc.　　　　Case No.  C 02 3116 JL ADR

1 motions, but he remains willing to cooperate with Plaintiff BEIGEL and the Receiver to
2 conclude the Receivership as soon as reasonably possible and distribute proceeds in accordance
3 with the Court's present Orders. DWAN seeks a practical way to extricate himself from a risky
4 and debilitating situation which has consumed a substantial portion of the revenues which were
5 to be divided between the parties under the Court's original Interlocutory Decree. He is entitled
6 to protection from personal exposure in the event the BEIGELS provoke a cross-complaint from
7 Arbortext, a fear well-founded given the history of the *Corel* litigation (see below). The primary
8 driving force perpetuating this litigation and forcing the Receiver to remain in place is the
9 BEIGELS' two year campaign against Arbortext, a campaign about which DWAN has only
10 sketchy information. The campaign has culminated in a demand letter from a Michigan attorney,
11 Claudia Rast, to Arbortext demanding $750,000 and setting an August 15 deadline. (As of the
12 week of September 6, 2005, Dwan has received no information as to the outcome of that demand
13 letter.)

## II

## BRIEF HISTORY OF POST INTERLOCUTORY DECREE PROCEEDINGS

16       On August 11, 2003, this Court issued its Order dissolving the partnership, setting out
17 provisions for a final accounting and winding up of the California general partnership, Blueberry
18 Software. The Court determined that the fair market value of the Filtrix software was $159,000,
19 that the fair market value of the domain name and Blueberry.com website was $20,000, and that
20 pending distribution of those two major assets of the Partnership, the capital accounts of the
21 parties would be balanced by a payment of $2,671 from STEVEN BEIGEL to KEVIN DWAN.
22       The Court ordered that the partnership assets be distributed to Mr. BEIGEL and that Mr.
23 BEIGEL buy out Mr. DWAN's interest in the Partnership by paying him $79,500 for his half of
24 the present market value of Filtrix, $10,000 representing one-half of the value of the website, and
25 the capital equalization payment to Mr. DWAN from Mr. BEIGEL of $2,671.
26       The Court also ordered that in the event outstanding accounts receivable (except for
27 Arbortext) generated net revenues, those net revenues should be divided between the parties.
28 With respect to Arbortext, the Court ordered that the future performance of the contract would be

the sole responsibility of STEVEN BEIGEL, and all royalty payments on the contract were to be shared equally by the parties.  Payments to KEVIN DWAN from royalty proceeds were to be credited, up to the amount of $79,500, against the debt owed by Mr. BEIGEL to Mr. DWAN.

Exhibit "E" to the Declaration of Kenneth Pritikin in support of BEIGEL's Motion to Seal Records is the transcript of an October 6, 2003 hearing.  At pages 33 and 34, there are comments by the Court intended to clarify the mechanism by which Mr. DWAN was to be compensated.  As of the date of that hearing, Mr. BEIGEL had possession of all partnership assets, but Mr. DWAN had received no compensation.  Counsel for DWAN inquired of the Court whether it would entertain a Judgment that incorporated the amount of money that Mr. DWAN was owed.  The Court indicated that the orders "right now could be enforceable by some kind of contempt process or something.  I don't know. . . . but if it's necessary simply to work out from a standpoint of the collection process that you have a judgment and you can submit to the court a form of judgment that simply effectuates the fact that the order that Mr. Beigel was to pay Mr. Dwan this money has the effect of being a judgment of that amount of money from Mr. Dwan to be paid by Mr. Beigel."

After waiting another five months and receiving no payment from Mr. BEIGEL, Mr. DWAN filed necessary papers to obtain an Abstract of Judgment in Contra Costa County.  That Abstract was enforced in August 2004 when the BEIGELS attempted to refinance their home for the purpose of paying non-judgment debts to family members.  It is difficult to accept the implication in the moving papers, and the specific representations in Mr. BEIGEL's Declaration, that he was surprised to find when he tried to refinance his home that an Abstract had been recorded.  In any event, the portions of the Judgment which required Mr. BEIGEL to compensate Mr. DWAN for his interest in the Partnership were satisfied by means of a Judgment Lien satisfied out of escrow.

Since August 2004, there have remained three areas of potential additional income to the Partnership in which Mr. DWAN is to share pursuant to the Court's August 11, 2003 Order.  These are the following:

//

3

Memorandum of Points and Authorities in Partial Opposition, etc.          Case No.  C 02 3116 JL ADR

1. Island Graphics. This was an account receivable of doubtful value. It was not vigorously pursued. The Receiver can report on the status of that account.

2. Vista Source - Parallax. A gross recovery of $120,000 was obtained by means of settlement of a lawsuit. Net proceeds of that recovery were deposited with the Receiver.

3. Revenues from Arbortext over and above the original $159,500 in royalties. Given the Court's Order of August 11 and Mr. DWAN's collection of $79,500 from Mr. BEIGEL's personal assets, should properly go to Mr. BEIGEL.[1]

Without the consent or participation of DWAN, Mr. BEIGEL's new corporation, Blueberry Software, Inc., filed the lawsuit against Corel, Inc., a Canadian software company. Corel responded with a Cross-Complaint filed in Canada. The Cross-Complaint named not only Mr. BEIGEL's new corporation but also the Partnership and partners. Mr. DWAN expended over $2,500 of his own money and traveled to Toronto to comply with Canadian rules regarding mandatory participation in pre-litigation settlement conferences. The *Corel* lawsuit against the Partnership was ultimately dismissed. Mr. BEIGEL's corporation recovered an unknown amount of money against Corel. Mr. BEIGEL has expressed no interest in reimbursing the Partnership for the expenses it incurred in retaining counsel and defending itself. Nor has he expressed any interest in reimbursing Mr. DWAN for the expenses he incurred in defending himself.

The abilities of Mr. BEIGEL and Blueberry Software, Inc. to perform the Arbortext contract are unclear. There have been no direct communications by Mr. BEIGEL with Mr. DWAN or Mr. DWAN's counsel in the last two years except for a single telephone message received by Mr. DWAN's counsel in the Summer of 2004 regarding the Abstract of Judgment. Communications have been by Ms. Tarantino, oral and written.

---

[1] This $159,500 is subject to an adjustment downward for two distributions which Mr. Beigel has received from the Partnership. The Partnership paid off his personal Bank of America credit card debt of approximately $16,000 and has, or intends to, satisfy a Judgment Lien by Beigel's attorney, Hanson, on Beigel's share of Partnership proceeds. The precise amounts of these payments may be provided by the Receiver. The total of those amounts should be subtracted from the first $159,000 in Arbortext royalty payments to determine the point at which royalty payments should be divided equally between the parties.

4

Memorandum of Points and Authorities in Partial Opposition, etc.        Case No. C 02 3116 JL ADR

1    It is anticipated that the Receiver will acknowledge that he has had no direct
2 communication with Mr. BEIGEL since a hearing a year and a half ago where Mr. BEIGEL was
3 present.  Following the hearing Mr. BEIGEL resorted to cursing and hurling personal insults and
4 obscenities as the parties were leaving the Court's Chambers.  The lack of direct communication
5 from Mr. BEIGEL (except possibly some e-mails, the authorship of which is unknown) is
6 alarming.  Mr. BEIGEL is asking this Court and the Partnership to permit the pursuit of a lawsuit
7 against Arbortext where he would be the essential witness in defense of the Partnership.
8    There are inaccuracies in Mr. BEIGEL's Declaration.  Mr. BEIGEL appears to ignore
9 express language to the contract and admit to the Court that he has willfully breached it by
10 failing to provide source code as required in two separate provisions of the contract with
11 Arbortext.  (See Beigel Declaration, paragraph 30.)

### III

### PLAINTIFF'S MOTIONS SEEKING TO EXCLUDE DWAN FROM FUTURE ARBORTEXT REVENUES SHOULD BE DENIED

15    Plaintiff cites no case authority for the proposition that the Court can modify its
16 August 11, 2003 Order so as to deprive Mr. DWAN a portion of his award.  Plaintiff argues that
17 Mr. DWAN behaved in an inequitable manner when he acted to collect the Judgment he had
18 against Mr. BEIGEL.  By the time Mr. DWAN collected his Judgment, Mr. BEIGEL had
19 possession of all Partnership assets for approximately a year and was generating income in
20 unknown amounts therefrom.  Mr. DWAN had received no compensation for his interest in those
21 assets.  BEIGEL confuses the Court's evaluation of DWAN's interest in the Partnership
22 ($10,000 for his one-half interest in the website, $79,500 for his one-half interest in Filtrix, and
23 $2,671 for the capital account equalizing payment) with the possible source of payment which
24 the Court designated.
25 //
26 //
27 //
28 //

# IV

## PLAINTIFF'S REQUEST FOR AN ORDER DIRECTING THE RECEIVER TO DISBURSE ALL FUNDS CURRENTLY ON HAND SHOULD BE DENIED

A reserve must be maintained to protect against events similar to those which occurred in the *Corel* litigation. Arbortext is a huge company worth over $100 million. It can afford litigation and the paper wars that go with litigation.

At the July 2003 trial, there was extensive testimony by Ms. Tarantino and Mr. DWAN as to Arbortext's complaints about the contract performance of Blueberry software. There were e-mails and telephone conversations before the Court in which Arbortext expressed frustration at the quality of the support it was receiving. Additionally, in Mr. BEIGEL's Declaration in support of these motions, and particularly paragraph 30, he appears to admit that he did not provide source codes specifically required by the contract. (See Declaration of Lawrence Bernheim, p. 5.)

DWAN is as anxious as BEIGEL is that there be distributions. He will explore a method of maintaining distributable monies in a blocked account so as to eliminate the ongoing Receiver expense. But given the history of the Corel claim, the extensive testimony at trial regarding Arbortext's complaints, and Mr. BEIGEL's acknowledgment in his Declaration that he has refused service and refused to provide source code, we respectfully disagree with BEIGEL's claim that "there is no reasonable ground to establish a reserve for such a claim (by Arbortext) because it is both speculative and without any basis in fact." (Plaintiff's Notice of Motion, p. 2, lines 11-12.)

What BEIGEL sees as an ongoing struggle against Arbortext for vindication and money is seen by DWAN as poking a hornet's nest with a stick.

//
//
//
//

6

Memorandum of Points and Authorities in Partial Opposition, etc.            Case No.  C 02 3116 JL ADR

V

**PLAINTIFF'S MOTION THAT DWAN BE DIRECTED TO
PAY TO BEIGEL "ALL OF DWAN'S PROCEEDS FROM THE
SALE OF FILTRIX SOFTWARE, WITHOUT DEDUCTION
FOR DWAN'S BUSINESS EXPENSES" SHOULD BE DENIED**

Previous Court Orders on this matter could be interpreted as requiring that DWAN turn over the gross proceeds of his August and September 2003 sales of Filtrix to BEIGEL without deduction for expenses. But, if Plaintiff is correct in his argument that this Court still has discretion to modify its previous Orders, then this is an Order that should fairly be modified. Plaintiff claim that DWAN acted "illegally" or "without authorization" to sell software in August and September 2003 is entirely inappropriate. As is set forth in the Declarations of Lawrence Bernheim (p. 2) and Kevin Dwan (p. 2).

Mr. DWAN sold 13 units of Blueberry software in August and September 2003. During that same period he was moving to transfer some 23 boxes of files and three computers to Mr. BEIGEL. The transfer was delayed for various reasons including the BEIGELS' attempts to attach conditions, including demanding non-existent inventories of records. During that two month period Mr. DWAN maintained the (707) area code number for the company (eventually transferred to Mr. BEIGEL), at his expense. He spent $90 to have computer technician Phil Lopez breakdown the computer system so that it could be transferred. He and his wife did what they could to preserve the website, sales, and service images of Blueberry, lest BEIGEL complain that he had damaged the product, its image, or its reputation.

Mr. BEIGEL claims that had he been handling the sales during that time he could have done it more cheaply. Mr. BEIGEL's testimony is without foundation. He has offered no evidence as to what it has cost him to operate his sales activity, or even that he has carried on sales activities. It is not clear that Mr. BEIGEL has directly participated in sales activities by his corporation.

There was less than $700 in net income. Mr. DWAN has repeatedly offered to turn that over to the BEIGELS to settle this issue. The fact is that Mr. DWAN had out-of-pocket expenses preserving the company until the BEIGELS were ready and able to take possession.

7

Memorandum of Points and Authorities in Partial Opposition, etc.        Case No.  C 02 3116 JL ADR

1  These should be considered.

## VI

## THE MOTION TO TERMINATE THE RECEIVERSHIP SHOULD BE DENIED

DWAN would like to see the Receivership significantly narrowed in its activities and discretion, but there are too many outstanding issues to terminate the Receiver at this time. Those issues include the following:

1. Preserving funds against a possible blow back to the Partnership by Mr. BEIGEL's ongoing conflict with Arbortext.

2. A poor history of disclosure on the part of BEIGEL. The *Corel* litigation resulted in substantial expense to the Partnership. The Partnership has not been reimbursed for that expense nor has the Partnership been told what the outcome of the *Corel* claim was. As was testified to a trial, the Arbortext litigation has been carried out in a similar atmosphere.

Months before trial, Mr. BEIGEL and his attorney, Mr. Hanson, demanded a meeting with Arbortext and imposed a condition that Mr. DWAN not be permitted to attend. (See correspondence of Lawrence Bernheim dated September 10, 2002 attached as Exhibit "B" to the Declaration of Kevin Dwan.) Claudia Rast, the current attorney for BEIGEL has not corresponded or communicated directly with Mr. DWAN or his counsel. With a Receiver in place, there is pressure on BEIGEL to move the Arbortext claim along, to resolve it one way or the other, and to provide information so that Mr. DWAN can know what is going on.

3. Prior to the Receivership being terminated, there should be a final determination of the distributions from the Partnership which have been made to each party to date, and the exact amount to which Mr. BEIGEL should be entitled before the parties begin dividing the balance of the Arbortext proceeds.

Dated: September 7, 2005.  

BERNHEIM & HICKS

By: _____
LAWRENCE BERNHEIM
Attorneys for Defendant
KEVIN DWAN, an individual
and dba BLUE TOOLS SOFTWARE